## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD VENTO, | ) | |
|       Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Misc. No. 06-525-HHK-AK |
| UNITED STATES OF AMERICA, | ) | |
|       Respondent & | ) | |
|       Counterclaim Petitioner. | ) | |
| _____ | ) | |
| | ) | |
| IRWIN L. CRAWFORD, II, | ) | |
|       Counterclaim Respondent | ) | |

_____

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF
## PETITION TO QUASH IRS THIRD-PARTY SUMMONS

In support of his Petition to Quash IRS Third-Party Summons, Petitioner Richard Vento, states as follows:

### I. INTRODUCTION

The Internal Revenue Service issued a summons to Irwin L. Crawford II, an employee of the Washington, D.C. office of Salomon Smith Barney, Inc. on November 1, 2006 (the "Summons"). On November 8, 2006, Revenue Agent Jackie Moss of the IRS caused a copy of that summons to be mailed to Petitioner Richard Vento. The Summons directs Mr. Crawford, apparently in his individual capacity, to produce certain documents relating to Mr. Vento during the years 2002, 2003, and 2004.

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

Mr. Vento has been a resident of the U.S. Virgin Islands since 2001.  Mr. Vento timely filed this action to quash the Summons.

## II.  BACKGROUND

### A.  I.R.C. §7609 and United States v. Powell

Under section 7609 of the Internal Revenue Code of 1986, as amended ("I.R.C." or the "Code"), as it applies in the United States,[1] a person may petition a federal district court to quash summons issued by the Internal Revenue Service to third-parties demanding information about the petitioner's income tax liability.  The standard by which an IRS summons may be enforced was set forth in United States v. Powell, 379 U.S. 48 (1964).  Each of the four requirements of Powell are relevant here and none was met by the Internal Revenue Service.

The first Powell test requires that the IRS third-party summons be issued for a proper purpose.  379 U.S. 48, 57.  The second test requires that the information sought be relevant to that proper purpose.  379 U.S. 48, 57.  The third test requires that the information sought not already be in the possession of the IRS.  379 U.S. 48, 57.  The fourth test from Powell is that all administrative steps required by law with respect to the issuance and service of the summons be followed.  379 U.S. 48, 58.

The IRS' self-measured assertions of compliance with the Powell tests do not automatically entitle the government to enforcement of the Summonses as the taxpayer retains the right to "challenge the summons on any appropriate ground."  379 U.S. 48, 58; United States v. Rockwell International, 897 F.2d 1255, 1262 (3d Cir. 1990).  Mr. Vento acknowledges that the

---

[1] Section 7701(a)(9) of the Code provides:  "When used in this title [26 U.S.C.]. . . The term 'United States' when used in a geographical sense includes only the States and the District of Columbia."

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

latitude given in the Code for issuance and enforcement of summons is broad and can only be circumscribed by the Congress. PAA Management, Ltd. v. United States, 962 F.2d 212, 216 (2d Cir. 1992). With respect to individual taxpayers residing in the U.S. Virgin Islands, this is exactly what Congress has done and is why the United States has failed to make a *prima facie* case for the Powell requirements.

### B. THE VIRGIN ISLANDS OF THE UNITED STATES

#### 1. Relationship with the United States

This case is essentially one of first impression in this Circuit, so it is appropriate to explain the unique relationship between the United States and the U.S. Virgin Islands.

The U.S. Virgin Islands is an organized, unincorporated territory of the United States. *See*, *generally*, Erwin, Tax Management Portfolio No. 995, *Business Operations in the Territories and Possessions of the United States (except Puerto Rico)*, pp. A-7 — A-8 and A-25 — A-27 (BNA 2004). Purchased from Denmark in 1917, the Virgin Islands of the United States was originally administered by the U.S. Navy. Act of March 3, 1917, ch. 171, sec. 7, 39 Stat. 1132, 1133 (providing a temporary government for the Danish West Indian Islands)("1917 Act"). Since that time the populace has been granted more and more autonomy by Congress so that it now has its own legislature, executive branch, and judiciary. Revised Organic Act of 1954, 68 Stat. 497 (July 22, 1954), codified as amended at 48 U.S.C. §§ 1541 *et seq*. However, Congress still possesses plenary authority over the territory. U.S. Const. art. IV, § 3, cl. 2; 48 U.S.C. § 1574(c); Polychrome International Corp. v. Krigger, 5 F.3d 1522, 1533-1534 (3d Cir. 1993), citing and quoting Sere v. Pitot, 10 U.S. (6 Cranch.) 332, 336 (1810) (". . . we find

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

Congress possessing and exercising the absolute and undisputed power of governing and legislating for the territories.").  This comprehensive authority of Congress over the U.S. Virgin Islands has been long recognized.  In Harris v. Boreham, 233 F.2d 110, 113-114 (3d Cir. 1956) the Third Circuit said:

> It is settled that Congress has sovereignty over the territories of the United States and accordingly has power to legislate for a territory with respect to all subjects upon which the legislature of a state might legislate within the state. . . . *It is also settled that Congress may delegate to a territory such of these powers as it sees fit.* . . . And the right of Congress to revise, alter and revoke these delegated powers does not diminish the powers while they reside in the territory.

233 F.2d 110, 113 [internal citations omitted][emphasis added].

## 2.  The Mirror Code

The most significant area of authority Congress has delegated to the Territory is the administration of its income tax law.  In the Naval Service Appropriation Act, 1922, ch. 44, § 1, 42 Stat. 123 (July 12, 1921), codified at 48 U.S.C. §1397, Congress provided that the tax law of the U.S. Virgin Islands would be the same as that of the United States but that the proceeds would belong to the Territory.[2]  This was not the first indication of the Congressional practice of attempting to make the Territory financially self-sufficient.  *See* 1917 Act, §5 and H.R. Rep. No. 1505, 64th Cong. 2d Sess. 6 (1917), cited and discussed at Hoff, "U.S. Federal Tax Policy Towards the Territories: Past, Present and Future," 37 *Tax Law Rev*. 53, 61-66 (1981)(hereafter "Tax Policy Toward the Territories").

---

[2] 48 U.S.C. §1397 provides:

> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands . . . .

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

The principles by which the Internal Revenue Code is applied to taxpayers in the U.S. Virgin Islands are referred to as the "mirror theory" or "mirror system" and the body of law as the "mirror Code." Abramson Enterprises, Inc. v. Government of the Virgin Islands, 994 F.2d 140, 142 (3rd Cir.), *cert. denied*, 510 U.S. 965 (1993)("The result of this statute has been to create a 'mirror system' of taxation under which Virgin Islands residents discharge their United States tax liability by paying all income taxes directly to the Treasury of the Virgin Islands."); *see*, Chyatte, "Taxation Through the Looking Glass: The Mirror Theory and the Income Tax System of the U.S. Virgin Islands Before and After the Tax Reform Act of 1986," 6 *Int'l Trade & Bus. L.* 170 (1988).

The income tax laws of the United States and the U.S. Virgin Islands are two separate tax systems, but with almost identical text. Vitco, Inc. v. Government of the Virgin Islands, 560 F.2d 180, 181-182 (3d Cir. 1977), *cert. denied*, 435 U.S. 980 (1978). The Abramson case, *supra*, is instructive in that it illustrates that the U.S. Virgin Islands income tax is on par with the United States income tax, that case holding that the ten percent corporate surtax enacted by the territorial legislature was a non-deductible "federal" surtax under section 164 of the Internal Revenue Code as mirrored to the Territory. Abramson, 994 F.2d at 145 (". . . because the corporate surtax is a tax on income authorized by Congress it has a federal quality that other taxes imposed by the Virgin Islands legislature may not share."). It is well settled that the Internal Revenue Service and the U.S. Virgin Islands Bureau of Internal Revenue are separate, distinct taxing authorities. The Third Circuit long ago recognized that the IRS and BIR enforce separate tax systems, stating:

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

> That purpose [of providing local revenue] has been consistently implemented by both the federal and territorial taxing authorities, who have recognized that Congress created a local, locally collectible income tax and that the United States and the Virgin Islands are distinct taxing jurisdictions although their income tax laws arise from an identical statute applicable to each.

Dudley v. Commissioner, 258 F.2d 182, 185 (3d Cir. 1958). The IRS, also long ago, recognized that its taxing authority did not extend to the U.S. Virgin Islands when it ruled that the U.S. Virgin Islands was a separate income tax jurisdiction from the United States because the definition of "United States" did not include the territory of the U.S. Virgin Islands (though it did include the territories of Alaska and Hawaii). Income Tax Ruling 2946, XIV C.B. 2109 (1935), *superseded*, Rev. Rul. 73-315, 1973-2 C.B. 225. *See also*, "Tax Policy Toward the Territories," at 68.

It is significant that the Internal Revenue Code defines the term "United States" to only include the fifty States and the District of Columbia. I.R.C. §7701(a)(9). Indeed, the income tax treaties of the United States explicitly exclude the U.S. Virgin Islands (and the other territories) from their coverage. *E.g.*, Convention Between Canada And The United States Of America With Respect To Taxes On Income And On Capital, Washington, D.C., September 26, 1980, as amended by Protocols signed on June 14, 1983, March 28, 1984, March 17, 1995, and July 29, 1997, Article III, ¶1(B)(I) ("The term "United States" means . . . The United States of America, but does not include Puerto Rico, the Virgin Islands, Guam or any other United States possession or territory . . . ."). This carving out of application of the Internal Revenue Code is unlike other substantive bodies of federal law. For instance, the securities laws of the United States apply in the U.S. Virgin Islands because the geographical scope includes "States" which are explicitly

6

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

defined to include the possessions of the United States.  15 U.S.C. §78c(a)(16).  *Also cf.*, *e.g.*, 7

U.S.C. §1626 (term "State" includes the U.S. Virgin Islands for purposes of distribution and

marketing of agricultural products); 29 U.S.C. §152(6)(definition of "commerce" includes

commerce with a United States territory under the National Labor Relations Act); 29 U.S.C.

§652(7) (redefines "State" to include U.S. Virgin Islands for Occupational Safety and Health

Act); 29 U.S.C. §1002(10) (Employee Retirement and Income Security Act defines "State" to

include U.S. Virgin Islands).  Unlike these and other areas of United States law, the Internal

Revenue Code does not by its terms apply to the U.S. Virgin Islands as the definition of "State"

in the I.R.C. includes only the fifty States and the District of Columbia.  I.R.C. §7701(a)(9).

Similarly instructive is a comparison of the application the federal payroll taxes and

income taxes in the U.S. Virgin Islands.  The Internal Revenue Code applies under the mirror

theory and is enforced by the U.S. Virgin Islands Bureau of Internal Revenue.  On the other

hand, the Federal Income Contributions Act (Social Security and Medicare withholding or

"FICA"), the Self-Employment Contributions Act (Social Security and Medicare for self-

employed persons or "SECA"), and the Federal Unemployment Tax Act ("FUTA") apply in the

Territory by changing the definition of "State" in each act.  I.R.C. §3121(e) (FICA); I.R.C.

§1402(d) (incorporating definition in §3121(e))(SECA); I.R.C. §3306(j) (FUTA).  Unlike the

absence of authority of the IRS for administration of income tax imposed on bona fide residents

of the possessions, the IRS is given explicit authority to administer the FICA, SECA, and FUTA

taxes in the possessions.  I.R.C. §7651(2).  Interestingly, the estate, gift, and generation-skipping

taxes in the Code do not apply to transfers of non-United States property by persons born or

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

naturalized in the U.S. Virgin Islands (if domiciled there at the time of transfer) even though they are United States citizens.  I.R.C. §§2208, 2209 and 2501(b) and (c); Treas. Reg. §26.2663-2(b). The Court should also compare the statutes giving the United States Customs Service explicit authority to enforce the customs laws of the U.S. Virgin Islands (grandfathered from when the territory was the Danish West Indies), 48 U.S.C. §1395 and §1406i; 19 C.F.R. §7.2(c); *see also* 33 Virgin Islands Code §50, with the complete absence of authority to enforce the income tax laws of the U.S. Virgin Islands.  There is no equivalent provision giving the IRS authority to enforce the income tax law of the U.S. Virgin Islands.

Comparison of the separate tax system of Guam under its mirror Code indicates a similar dichotomy of the income tax authority.  Prior to 1951, there was no income tax law applicable in Guam, its residents only paying tax to the United States on United States source income.  Wilson v. Kennedy, 232 F.2d 153, 154 (9th Cir. 1956).  Only by enactment of section 31 of Guam's Organic Act, 48 U.S.C. §1421i(a), did an income tax law come into effect in that territory and that was by operation of a mirror Code system as in the U.S. Virgin Islands.  Laguna v. Ansell, 102 F. Supp. 919,  (D. Guam), *aff'd per curiam*, 212 F.2d 207 (9th Cir.), *cert. denied*, 348 U.S. 830 (1954); s*ee*, *generally*, Erwin, *Business Operations in the Territories and Possessions of the United States (except Puerto Rico)*, pp. A-99 (BNA 2004).  It is beyond doubt that Guam has a different tax system than the United States (as defined in I.R.C. §7701(a)(9)).  Sayre & Co. Ltd. v. Riddell, 395 F.2d 407, 410 (9th Cir. 1968).

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

    3.  Tax Reform Act of 1986 and Income Taxation of U.S. Virgin Islands Residents

    The Tax Reform Act of 1986 enacted new §932, the filing rule for individuals applicable for the years for which information is sought by the Summons.  Pub. L. 99-514, §1274(a), 100 Stat. 2085 (Oct. 22, 1986)  ("TRA 1986").  The proper application of I.R.C. §932 determines the authority of the Internal Revenue Service over U.S. Virgin Islands taxpayers.  As part of TRA 1986, and as a prerequisite to certain changes in the ability of the U.S. Virgin Islands to administer its income tax, Congress required that the United States and the U.S. Virgin Islands enter into an agreement providing for the exchange of information about United States and U.S. Virgin Islands taxpayers.  TRA 1986, §1277(c)(1).[3]

    Case law explains how the Internal Revenue Code applies in the U.S. Virgin Islands, *see e.g.*, Abramson, *supra*, (corporate surtax enacted by the U.S. Virgin Islands legislature is a non-deductible *federal* surtax under I.R.C. §164 as mirrored to the U.S. Virgin Islands); Johnson v. Quinn, 821 F.2d 212 (3d Cir. 1987)(U.S. Virgin Islands resident taxpayers entitled only to deduction for California taxes not foreign tax credit); Chicago Bridge & Iron Co., Ltd. v. Wheatley, 430 F.2d 973 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 977 (1970)(equality of treatment required, otherwise to allow the U.S. Virgin Islands to disallow the deduction would

---

[3] Section 1277(c)(1) of TRA 1986 provides, in pertinent part:

    "The amendments made by section 1275(c) shall apply with respect to the Virgin Islands (and residents thereof and corporations created or organized therein) only if (and so long as) an implementing agreement is in effect between the United States and the Virgin Islands with respect to the establishment of rules under which the evasion or avoidance of United States income tax shall not be permitted or facilitated by such possession. . . . "

*See*, Tax Implementation Agreement Between the United States of America and the Virgin Islands, Feb. 24, 1987, 1989-1 C.B. 347.

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

allow it to claim a larger tax than the United States would have imposed in absence of the mirror system), and similar decisions from the Ninth Circuit interpreting the mirror Code of Guam, *e.g.*, Sayre & Co. Ltd. v. Riddell, 395 F.2d 407, 410 n.5 (9th Cir. 1968) (". . . Section 31 [of the Guam Organic Act] was added on the floor of the House with explanatory comments which made it clear that Congress intended to create a separate, though identical, income tax structure for Guam itself."), will indicate that persons resident in the U.S. Virgin Islands pay tax at the same rates as residents of the United States. Though complicated, the tax system imposed by Congress on residents of the U.S. Virgin Islands is not without its logic and it applies to the Ventos and cannot be ignored by the IRS at its whim.

Section 932 of the Internal Revenue Code establishes the filing rule for individuals with income from sources in the U.S. Virgin Islands. Individuals who are not residents of the U.S. Virgin Islands but who have income from U.S. Virgin Islands sources are required to file two income tax returns, one with the Internal Revenue Service and one with the Virgin Islands Bureau of Internal Revenue, paying the appropriate percentage of tax to each jurisdiction. I.R.C. § 932(b). Individuals who are bona fide residents of the U.S. Virgin Islands on the last day of the tax year,[4] file one return with the Virgin Islands Bureau of Internal Revenue. I.R.C. § 932(c).[5] The key provisions of this rule are the three requirements of § 932(c)(4):

---

[4] The period for determination was changed to "during the entire taxable year" from "at the close of the taxable year" by the American Jobs Creation Act of 2004, Pub. L. 108-357, §908(c)(2), ___ Stat. ___ (Oct. 22, 2004), effective for years ending after date of enactment. New regulations provide a "closer connection" and "tax home" test for 2004. Temp. Reg. §1.937T-1(h). The new standards for income tax residency in the possessions of the United States are thoroughly explained in Roberts and Kellerhals, "To Be or Not to Be a Resident? Residency in the Possessions After the Enactment of the AJCA," 34 *Tax Mgmt. Int'l J.* 363 (July 8, 2005).

[5] Section 932(c), as in effect in 2002 and 2003, provides:

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

      (A) The individual must be a bona fide resident of the U.S. Virgin Islands at the close of
the taxable year;

      (B) The individual must report income from all sources on the return filed with the U.S.
Virgin Islands; and

      (C) The individual must pay the tax liability to the U.S. Virgin Islands on the income
reported on the return.

Once these requirements have been met, the individual has no liability for income tax to the

United States.  The obvious corollary to that is that the United States must show that one of these

requirements have not been met before it may audit a U.S. Virgin Islands taxpayer.

      Because the Internal Revenue Service and the U.S. Treasury Department did not issue

regulations explaining the meaning of "bona fide resident" for purposes of §932 until 2005 —

despite explicit Congressional mandate to do so in the Tax Reform Act of 1986, Pub. L. 99-514,

---

(c) Treatment of Virgin Islands residents.
    (1) Application of subsection. This subsection shall apply to an individual for the taxable year
if —
      (A) such individual is a bona fide resident of the Virgin Islands at the close of the taxable
year, or
      (B) such individual files a joint return for the taxable year with an individual described in
subparagraph (A).
    (2) Filing requirement. Each individual to whom this subsection applies for the taxable year
shall file an income tax return for the taxable year with the Virgin Islands.
    (3) Extent of income tax liability. In the case of an individual to whom this subsection applies
in a taxable year for purposes of so much of this title (other than this section and section 7654)
as relates to the taxes imposed by this chapter, the Virgin Islands shall be treated as including
the United States.
    (4) Residents of the Virgin Islands. In the case of an individual—
      (A) who is a bona fide resident of the Virgin Islands at the close of the taxable year,
      (B) who, on his return of income tax to the Virgin Islands, reports income from all sources
and identifies the source of each item shown on such return, and
      (C) who fully pays his tax liability referred to in section 934(a) to the Virgin Islands with
respect to such income,
for purposes of calculating income tax liability to the United States, gross income shall not include
any amount included in gross income on such return, and allocable deductions and credits shall
not be taken into account.

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

§1274(c) — the standard for determining whether an individual United States citizen is a bona fide resident of the U.S. Virgin Islands for pre-2004 years is made using a facts-and-circumstances test.[6] Preece v. Commissioner, 95 T.C. 594, 600-601 (1990) (facts-and-circumstances test under Treas. Regs §1.871-2 through §1.871-5 (relating to what constitutes residence in the United States in the case of an alien individual) applied to determine income tax residency in Commonwealth of Northern Mariana Islands); see, generally, Erwin, Tax Management Portfolio No. 995, *Business Operations in the Territories and Possessions of the United States (except Puerto Rico)*, A-71—A-72 (BNA 2004).  Unfortunately, the Treasury Regulations invoked by the Tax Court in Preece offer modest guidance but do touch on the almost metaphysical quality of the analysis:  "Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient."  Treas. Reg. §1.871-2(b).  Practitioners advising clients in the territories of the United States relying on the edict of Preece that the facts-and-circumstances test under I.R.C. §871 applies, turn to Sochurek v. Commissioner, 300 F.2d 34 (7th Cir. 1962).[7]  The court in Sochurek gleaned factors from previous cases, and listed the standards for the facts-and-circumstances test, to wit:

> (1) the intention of the taxpayer;
> (2) establishment of a home temporarily in the foreign country for an indefinite period;

---

[6] The facts-and-circumstances test also applies for 2004 pursuant to regulation. Treas. Reg. §1.937-1(b)(4).
[7] Indeed, the U.S. Treasury Dept. cites to Sochurek in its recently issued and long-awaited final regulations on residency in the United States possessions for tax years after October 22, 2004.  T.D. 9248, 71 FR 4996, 5000 (Jan. 31, 2006).

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

(3) participation in the activities of his or her chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment;

(4) physical presence in the foreign country consistent with employment;

(5) nature, extent and reasons for temporary absences from his temporary foreign home;

(6) assumption of economic burdens and payment of taxes to the foreign country;

(7) status of resident contrasted to that of transient or sojourner;

(8) treatment accorded his or her income tax status by his or her employer;

(9) marital status and residence of his family;

(10) nature and duration of employment, whether his or her assignment abroad could be promptly accomplished within a definite or specified time; and

(11)   good faith in making his or her trip abroad, whether for purpose of tax evasion.

Sochurek, 300 F.2d 34, 38.   The Ventos allege and would prove that they were bona fide residents of the U.S. Virgin Islands for the years which are the object of the Summons under any construction of a facts-and-circumstances test.


III. IRS FAILED THREE OF THE FOUR TESTS UNDER POWELL IN ISSUANCE OF THE SUMMONSES

A.  INTRODUCTION

Having explained the unusual background of the income tax system of the U.S. Virgin Islands, it is clear that the issuance of a summons with respect to an inquiry or investigation by the IRS of a resident taxpayer in the U.S. Virgin Islands cannot be justified by the normal IRS declarations of compliance with the four Powell tests.

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

### B. INVESTIGATION OF THE VENTOS, NOT BEING UNITED STATES TAXPAYERS, IS NOT A VALID PURPOSE UNDER <u>POWELL</u>

The IRS failed to meet the threshold test of <u>Powell</u>, namely that the issuance of the summonses is for a valid purpose. Given that the function of the IRS is to investigate taxpayers, it is an unusual situation in which a summoning of financial information would fail that standard. This is such a situation.

As explained above, the relationship between the United States and the U.S. Virgin Islands is unusual, both within and without the income tax context. Because of the peculiarities of the statutory income tax scheme devised by Congress to make the Territory financially self-sufficient, the IRS cannot merely employ its normal argument that is, simply: because we are investigating the income tax liability of these people, we are entitled to this information. Such might be correct when it relates to United States taxpayers, but as explained above, the Ventos are not, in the eyes of Congress, "United States taxpayers." Rather, because of the operation of I.R.C. §932(c), they are "U.S. Virgin Islands taxpayers," tax administrative authority over which Congress has given to the Territory by the enactment, long ago, of the Naval Services Appropriation Act of 1922. Contrary to the limit on its authority placed by Congress, the IRS asserts that it is investigating the liability of Mr. Vento to the U.S. Virgin Islands. Declaration of Jackie Moss, ¶14.

Despite the obvious misunderstanding of the Government it is well settled that the United States and the U.S. Virgin Islands are separate and distinct taxing authorities, both ruled over by

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

Congress, not the IRS.  This dichotomy is proven by the almost identical relationship for income

tax purposes between the United States and Guam, as explained above.

It is important to note that it was necessary for Congress explicitly to extend the

administrative and enforcement provisions of the Code to the U.S. Virgin Islands and the other

territories.  I.R.C. §7651; see also, III.D.2., *infra*.  Otherwise, the IRS could not go there and

collect taxes owed by United States taxpayers no more than it can go anywhere outside its

geographical limits (as defined at I.R.C. §7701(a)(9)) without authority under a treaty or other

international agreement. This was illustrated in <u>In Re Various Orders to Show Cause</u>, 1988 WL

62872, 1988 U.S. Dist. LEXIS 17399, 61 A.F.T.R.2d (RIA) ¶628 (D.V.I. 1988), where the

federal District Court of the U.S. Virgin Islands enforced IRS summons against *United States*

corporations with offices in the U.S. Virgin Islands; as United States corporations, they were

subject to IRS authority because there was (and is) no equivalent statute like I.R.C. §932(c) for

corporations.[8]  As pointed out, however, the Ventos are not "United States taxpayers," and the

extension of the enforcement power of the IRS on a geographic basis does not operate as a

practical repeal of I.R.C. §932(c) which gives the U.S. Virgin Islands administrative and

enforcement  authority over its individual residents.

---

[8] <u>In re Various Orders to Show Cause</u> is of questionable authority because it involved pre-TRA 1986 tax years.

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

## C. FINANCIAL INFORMATION IN FINANCIAL INSTITUTION IS IRRELEVANT UNDER POWELL IN INVESTIGATION OF BONA FIDE RESIDENTS OF THE U.S. VIRGIN ISLANDS

The second test under Powell requires that IRS summons seek information relevant to the purpose of the investigation. While the Court will defer to a government agency's assessment of relevance, it may not do so if such is "obviously wrong." In re Sealed Case, 42 F.3d 1412, 1419 (D.C. Cir. 1994). The relevance of financial data about persons who are not United States taxpayers or to determine residency under Sochurek is "obviously wrong." The IRS does not have carte blanche to investigate any person unless it has jurisdiction over them. Even if the income is from United States sources an individual resident in the U.S. Virgin Islands would not be required to file a return with the IRS because Code §932(c) requires that individual to file his or her return with the U.S. Virgin Islands Bureau of Internal Revenue.[9] This is different from the treatment for a non-resident alien with income from sources in the United States, who generally would be subject to United States tax on such United States source income, I.R.C. §871, absent treaty protection. Accordingly, no information can be relevant to an IRS investigation of persons who are not United States taxpayers.

Assuming, *arguendo*, that the purpose that satisfies the first Powell test is the determination of whether the Ventos are bona fide residents of the U.S. Virgin Islands for the

---

[9] Another example of the effect of I.R.C. §932(c) is illustrated by "S" corporations with income in either the United States or the U.S. Virgin Islands but owned by a resident of the other jurisdiction. *See* Erwin, "The U.S. Virgin Islands Mirror Code and 'S' Corporations," 15 *Tax Notes International* 1635 (Nov. 17, 1997). This position was adopted by the IRS and Treasury in the temporary regulations issued last year. Temp. Reg. §1.932-1T(g)(1)(ii)(C) and -1T(g)(2)(ii)(C); *accord*, Temp. Reg. §1.935-1T(c)(1)(ii)(C) (Guam and Commonwealth of Northern Mariana Islands).

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

several tax years listed in the summons.  Since this question of whether the IRS has the authority

to investigate the Ventos is dependent on their status as residents of the U.S. Virgin Islands, the

summoning of documents that in no way relate to facts which would establish the situs of the

residency for income tax purposes cannot be said to be relevant to the purpose.  No information

which the IRS could possibly obtain from a financial institution in New York could shed light on

whether any one of the residency factors set forth in <u>Sochurek</u>, *supra*, are satisfied by the Ventos.

Records of investment transactions — the only type of information Salomon Smith Barney, Inc.

would have — have no bearing on (1) the intention of the Ventos to be residents of St. Thomas;

(2) the establishment of their home in St. Thomas for an indefinite period; (3) participation by

the Ventos in community activities in the U.S. Virgin Islands on social and cultural levels,

identification with the daily lives of the people and, in general, assimilation into the local

environment; (4) physical presence in the U.S. Virgin Islands consistent with employment; (5)

nature, extent and reasons for temporary absences from St. Thomas;  (6) assumption of economic

burdens in the U.S. Virgin Islands (*e.g.*, paying local property taxes) and payment of income

taxes to the U.S. Virgin Islands; (7) status of the Ventos as residents contrasted to that of

transients or sojourners; (8) treatment accorded their  income tax status by their employers; (9)

marital status and residence of the Ventos family; (10) nature and duration of employment; and

(11)  the Ventos good faith in moving to the U.S. Virgin Islands for other than the purpose of tax

evasion.[10]  Accordingly, the information sought by the IRS with the Summonses is not relevant

to the threshold purpose of the putative IRS investigation of residency in the U.S. Virgin Islands.

---

[10] Again, residents of the U.S. Virgin Islands pay taxes at the same rates as U.S. taxpayers.

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

### D.  FAILURE TO FOLLOW PROCEDURES OF THE TAX IMPLEMENTATION AGREEMENT BETWEEN UNITED STATES AND U.S. VIRGIN ISLANDS AND IN ABSENCE OF DELEGATION ORDER VIOLATES FOURTH <u>POWELL</u> TEST

1.  Tax Implementation Agreement Requires the IRS to Follow Procedures When Investigating U.S. Virgin Islands Residents

The fourth test under <u>Powell</u> requires that the IRS summons be issued after proper administrative steps have been taken.  Despite the litany in the revenue agent's declaration, there is absolutely no mention of the Tax Implementation Agreement Between the United States of America and the Virgin Islands, Feb. 24, 1987, 1989-1 C.B. 347 ("TIA"), a copy of which is attached hereto as Appendix A for the convenience of the Court..  In issuing the summons, the IRS failed to observe the procedures and requirements of the TIA  The TIA is mandated by Congress and must remain in effect in order for certain provisions of the Tax Reform Act of 1986 to have effect in the U.S. Virgin Islands.  TRA 1986, §1277(c)(1).

TIA provides rules for the routine and non-routine exchange of information between the IRS and BIR.  TIA, Article 4 — Exchange of Information, ¶2.  It also sets forth the procedures and limitations on disclosure of taxpayer information.  TIA, Appendix A — Limitation on Disclosure of Tax Information.  The affidavit the government offers as supporting the valid purpose requirement of the <u>Powell</u> test makes absolutely no mention of the TIA.

The presumptuous issuance of the Summonses without adhering to — or even nominally acknowledging — the TIA is in contrast to the procedure the IRS recognizes applies with a taxpayer in a non-United States jurisdiction covered by an income tax treaty or a tax information exchange agreement.  Pursuant to a treaty, a summons may issue solely for the purpose of aiding

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

foreign tax authorities in a foreign tax investigation, although no United States income tax is

involved.  In United States v. A.L. Burbank & Co., Ltd., 525 F.2d 9 (2d Cir. 1975), *cert. denied*,

426 U.S. 934 (1976), this Court held that the United States-Canada income tax treaty allowed the

IRS to use its summons power to investigate on behalf of Canada, stating:

> We think the fair reading of the Treaty is that if Canada is investigating the tax
> liability of one who is potentially delinquent to it, then the United States may
> utilize the same investigative techniques that it would employ if that person were
> under investigation here for a domestic tax liability. To do otherwise would negate
> the very purpose of the Treaty.

525 F.2d 9, 13.  Here, instead of respecting the existence of the agreement as was done in

Burbank, the IRS simply disregards it, essentially giving it no force and effect.


  2.  IRS Third-Party Summons Was Not Issued Pursuant To Proper Treasury Order or Delegation
Order

        The Secretary of the Treasury is authorized to issue and serve administrative summons,

I.R.C. §7602(a)(2), and this includes delegates of the Secretary, I.R.C. §7701(a)(11)(B), which,

in turn, includes redelegations of authority, I.R.C. §7701(a)(12)(A).  The IRS is a delegate of the

Secretary of the Treasury with authority to issue and serve summonses.  I.R.C. §7803;

Delegation Order 150-2 (March 9, 2001).  This authority is not boundless, however, but is

limited to its jurisdictional ambit of the internal revenue laws which it has specific authority to

administer.  United States v. Humble Oil & Refining Co., 488 F.2d 953, 962 (5th Cir. 1974 )

(IRS not empowered by §7602 to issue summons in aid of its §7601 research projects or

inquiries).

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

One limit of its jurisdiction is found at I.R.C. §932(c) where Congress gave to the U.S. Virgin Islands taxing authority over bona fide residents of that U.S. territory. The issuance of a summons to or in respect of persons over which an administrative agency has no authority is patently improper. Assuming, *arguendo*, that the Secretary of the Treasury did have authority to override the strictures of §932(c), no delegation order or regulation from the Treasury gives the IRS authority to investigate, including the use of summons, bona fide residents of the U.S. Virgin Islands.

Indeed, there is a specific delegation order respecting activities under the TIA. Delegation Order 150-39 (July 17, 2002) (delegation of authority to Commissioner to act as competent authority under tax coordination agreements with the possessions). Again, the Agent's Declaration makes no mention of the TIA or compliance with Delegation Order 150-39, thus violating the fourth <u>Powell</u> test.

It is well settled that the IRS must follow its own delegation orders in issuing summonses and other operative documents. *See, e.g.*, <u>United States v. Bacheler</u>, 611 F.2d 443, 449 (3d Cir. 1979) (reciting the chain of authority in certain delegation orders). The issuance of the Summons in this case without the proper authority makes it void and prevents this Court from ordering it to be enforced.

The Government is apparently relying on its authority to issue the third-party Summonses as stemming only from the statutes relating to the issuance of summons, namely I.R.C. §7602 and §7609. It does not address the reason Congress felt it necessary to explicitly state that the enforcement authority of the IRS for the taxes due under the Code as it applies in the United

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

States are extended to the U.S. Virgin Islands.  I.R.C. §7651.  It will be helpful to parse Code

§7651 to show why it does not extend the full force of the IRS to U.S. Virgin Islands residents.

Section 7651(1) applies the administrative provisions of the Code to the possessions of the

United States, stating:

> All provisions of the laws of the United States applicable to the assessment and collection of any tax *imposed by this title* or of any other liability arising *under this title* (including penalties) shall, in respect of such tax or liability, extend to and be applicable in any possession of the United States in the same manner and to the same extent as if such possession were a State, and as if the term 'United States' when used in a geographical sense included such possession.

[emphasis added].  The clear reference to taxes imposed by  "this title" in I.R.C. §7651 clearly

means only Title 26, United States Code.  The income taxes imposed in the U.S. Virgin Islands

are, however, imposed by section 1397 of Title 48, the codification of the Naval Services

Appropriation Act of 1922.  Subsection 7651(2) goes on to clarify and redefine the term "United

States" for the limited purposes of collecting tax imposed under Title 26.  This is not the

substantive imposition of the tax imposed under §1 of the Code for persons in the fifty States and

the District of Columbia or imposed under 48 U.S.C. §1397 on persons in the U.S. Virgin

Islands.

Without §7651, the IRS could not enforce the tax laws of the United States in the U.S.

Virgin Islands.   With §7651, it can only enforce the administrative provisions of the Code

against persons whose income tax liability arose by reason of residency in the fifty States or the

District of Columbia.  While not directly controlling here, the extension of the power of the IRS

to use §7602 to the territories indicates that Congress placed geographical limits on the power of

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

the IRS in conjunction with its assignment of administrative authority to the several territories,

and not the IRS, to administer the tax system which Congress imposed on it.

## IV. CONCLUSION

The United States has failed to make its *prima facie* case with respect to three elements of

the <u>Powell</u> test. Investigation of individuals who qualify as bona fide residents of the U.S.

Virgin Islands by the IRS is not a valid purpose for issuance of a summons and thus fails the first

test of <u>Powell</u>. Even if investigation of residents of the U.S. Virgin Islands is a valid purpose, the

threshold test is whether they are bona fide residents of the Territory and financial data is not

relevant to that inquiry under <u>Sochurek</u>, thus failing the second <u>Powell</u> test. Finally, the IRS

ignored its own procedures and agreements so that issuance of the summonses fails the

procedures test of <u>Powell</u>.

Accordingly, the Petition to Quash IRS Third-Party Summons be granted and the

Counterclaim denied.

RICHARD VENTO, PETITIONER

Date: March 13, 2007.

By:    <u>MCHAEL C. DURNEY</u>

LAW OFFICES OF MICHAEL C. DURNEY
1072 Thomas Jefferson Street, N.W.
Washington D.C. 20007
(202) 965-7744
D.C. Bar No. 111872
Email: mcd@mdurney.com

Attorney for Petitioner

# TAX IMPLEMENTATION AGREEMENT BETWEEN

## THE UNITED STATES OF AMERICA

### AND

### THE VIRGIN ISLANDS

The Government of the United States of America and the Government of the Virgin Islands desiring to conclude an Agreement (hereinafter referred to as the "Agreement") for the exchange of information and mutual assistance with respect to taxes in order to prevent the evasion or avoidance of United States or Virgin Islands taxes have agreed as follows:

- 2 -

## Article 1

### SCOPE OF AGREEMENT

This Agreement is intended to provide for mutual assistance in tax matters, including exchanges of information, for purposes of administering the tax laws of the respective Governments and especially to prevent avoidance or evasion of the Governments' respective fiscal laws. This Agreement is the implementing agreement described in section 1277 of the Tax Reform Act of 1986, Pub. L. No. 99-514. The provisions of this Agreement are subject to provisions of the statutes, regulations, and published procedures of the Contracting Governments.

Upon entry into force, this Agreement replaces any and all prior tax coordination agreements and implementing agreements between the respective Governments.

## Article 2

### TAXES COVERED

1. This Agreement shall apply to the following taxes imposed by or on behalf of a Contracting Government:

> a)  in the case of the United States of America, all
>     taxes imposed by the Code, and
>
> b)  in the case of the Virgin Islands, all taxes
>     imposed by the Code as it applies in the Virgin

- 3 -

Islands and all local income taxes imposed by the
Virgin Islands as authorized by the Tax Reform Act
of 1986.

2. This Agreement shall apply also to any identical or
substantially similar taxes imposed after the date of signature
of the Agreement in addition to or in place of the existing
taxes. The competent authority of each Government shall
notify the other of significant changes in laws which may affect
the obligations of that Government pursuant to this Agreement.

3. This Agreement shall not apply to the extent that an
action or proceeding concerning taxes covered by this Agreement
is barred by the applicant Government's statute of limitations.

Article 3

DEFINITIONS

1. In this Agreement, unless otherwise defined:

   a) The term "Code" shall mean the Internal Revenue
      Code of 1986, as amended, and any predecessor or
      successor statutes.

   b) The term "competent authority" means:

      (i) in the case of the United States of America,
         the Secretary of the Treasury or his
         delegate, and

      (ii) in the case of the Virgin Islands, the

- 4 -

Director, Virgin Islands Bureau of Internal
Revenue or his delegate.

c)   The term "Contracting Government" means the United
States or the Virgin Islands as the context
requires.

d)   The term "non-Virgin Islands source income" means
income for which the source (under source rules
promulgated by the U.S. Internal Revenue Service)
is not the Virgin Islands.

e)   The term "person" includes an individual and a
partnership, corporation, company, trust, estate,
association or other legal entity.

f)   The term "tax" means any tax to which the
Agreement applies.

g)   The term "taxpayer" means:

(i)   in the case of the United States, any person
subject to the provisions of the Code; and

(ii)   in the case of the Virgin Islands, any person
subject to the provisions of the Code as it
applies in the Virgin Islands or any local
income tax laws imposed by the Virgin
Islands.

h)   For purposes of determining the geographical area
within which jurisdiction to compel production of
information under this Agreement may be exercised,
the term "United States" means the United States

- 5 -

of America, including Puerto Rico, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and any other United States possession or territory and the territorial waters thereof, but not including the Virgin Islands. Such jurisdiction may be exercised if the information or the custodian of the information is located within the United States.

i) For purposes of determining the geographical area within which jurisdiction to compel production of information under this Agreement may be exercised, the term "Virgin Islands" means the territorial domain, lands and waters acquired by the United States through cession of the Danish West Indian Islands by the Convention between the United States of America and His Majesty the King of Denmark entered into August 4, 1916, and ratified by the Senate on September 7, 1916 (39 Stat. 1706). Such jurisdiction may be exercised if the information or the custodian of the information is located within the Virgin Islands.

2. Any term not defined in this Agreement, unless the context otherwise requires or the competent authorities agree to a common meaning pursuant to the provisions of Article 5, shall have the meaning which it has under the laws of the Contracting

- 6 -

Governments relating to the taxes which are the subject of this Agreement.

## Article 4

### EXCHANGE OF INFORMATION

1.    The competent authorities of the Contracting Governments shall exchange information to administer and enforce the domestic laws of the Contracting Governments concerning taxes covered by this Agreement.   Information shall be exchanged to fulfill the purposes of this Agreement without regard to whether the information relates to, or is held by, a taxpayer of a Contracting Government.   Procedures for exchange of information are set forth in Appendix A, Limitations on Disclosure of Tax Information, which is incorporated by reference and made a part of this Agreement.

2.    The competent authorities of the Contracting Governments shall automatically transmit information to each other for the purposes referred to in paragraph 1.   The competent authorities shall determine the items of information to be exchanged pursuant to this paragraph and the procedures to be used to exchange such items of information.

> a)    It is intended that the United States shall routinely supply to the Virgin Islands the following information, to the extent available and

- 7 -

subject to the tolerances and criteria to be agreed upon by the competent authorities:

(i)  copies of reports of individual, partnership, corporate, and employment audit changes that disclose information relevant to the Virgin Islands;

(ii)  copies of Forms 5335 (Income Subject to Withholding under Chapter 3, Internal Revenue Code as reported on Form 1042S, and any successor forms) that disclose information relevant to the Virgin Islands;

(iii)  copies of Schedule K-1 of Form 1065 (U.S. Partnership Return of Income) and audit results, when the partnership return is examined and it appears the examination will affect returns of Virgin Islands taxpayers;

(iv)  copies of responses to Forms 4901, 4902, and 4903, Requests for Information About Tax Forms, where such reply indicates that the taxpayer has filed a return with the Virgin Islands;

(v)  copies of Forms 1099 and all other information returns where the recipient of income is a Virgin Islands resident or lists a Virgin Islands address or the income is from Virgin Islands sources;

- 8 -

(vi)   copies of the W-2 combined wage reporting
tape summarizing Forms W-2VI (U.S. Virgin
Islands Wage and Tax Statement) and Forms
W-3SS (Transmittal of Wage and Tax
Statements) filed with the Social Security
Administration by employers in the Virgin
Islands, which tape is provided annually to
the Internal Revenue Service by the Social
Security Administration; and

(vii)   copies of Forms 8279 (Election to be Treated
as a FSC or as a Small FSC) that indicate
creation or organization of any Foreign Sales
Corporation (as defined in Section 922 of the
Code) in the Virgin Islands.

b)  It is intended that the Virgin Islands shall
routinely supply to the United States the
following information, to the extent available and
subject to the tolerances and criteria to be
agreed upon by the competent authorities:

(i)   copies of reports of individual, partnership,
corporate, and employment audit changes that
disclose information relevant to the United
States;

(ii)  information about the ownership interests of
all corporations subject to Virgin Islands
tax with non-Virgin Islands source income

- 9 -

that receive a rebate, subsidy or reduction
of Virgin Islands taxes;

(iii)  information about any taxpayer subject to
Virgin Islands tax with non-Virgin Islands
source income who files an income tax return
with the Virgin Islands claiming for the
first time to be a Virgin Islands resident;

(iv)  all corporate information about ownership
interests in any Foreign Sales Corporation
(as defined in section 922 of the Code)
established in the Virgin Islands;

(v)  such information about corporations electing
application of section 936 of the Code as may
be agreed upon by the competent authorities;
and

(vi)  information about any rebates, subsidies or
reductions of tax provided by the Virgin
Islands for income derived by a Virgin
Islands taxpayer from other United States
possessions and territories.

c)  The competent authorities of the Contracting
Governments may agree to expand or limit the
information to be routinely exchanged.

3.  The competent authority of a Contracting Government
shall spontaneously transmit to the competent authority of the
other Government information which has come to the attention of

the first-mentioned Government and which is likely to be relevant to, and bear significantly on, administration and enforcement of the domestic laws concerning taxes of the second-mentioned Government. The competent authorities shall determine the information to be exchanged pursuant to this paragraph and take such measures and implement such procedures as are necessary to ensure that the information is forwarded to the competent authority of the other Government.

4.    The competent authority of the requested Government shall endeavor to provide information upon request by the competent authority of the applicant Government for the administration and enforcement of the domestic laws of the Contracting Governments concerning taxes. If the information available in the tax files of the requested Government is not sufficient to enable compliance with the request, that Government shall take the necessary measures to provide the applicant Government with the information requested. Notwithstanding the foregoing, the United States may exercise its rights under section 7602 et seq. of the Code to obtain information in the Virgin Islands without resorting to the procedures set forth in this Agreement. However, in the event the United States so exercises its rights within the Virgin Islands it shall notify the competent authority of the Virgin Islands prior to taking action or as soon as practicable, unless the competent authorities agree to limit notification with respect to certain classes of cases.

- 11 -

5.    The provisions of the preceding paragraphs shall not be construed so as to impose on a Contracting Government the obligation:

      a)    to supply particular items of information which are not obtainable under the laws of that Government or of the other Contracting Government;

      b)    to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process;

      c)    to supply information, the disclosure of which would be contrary to public policy; or

      d)    to disclose information if such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

6.    Any information received by a Contracting Government shall be subject to Appendix A, Limitations on Disclosure of Tax Information.


### Article 5

#### MUTUAL AGREEMENT PROCEDURE AND COSTS


1.    The competent authorities of the Contracting Governments shall implement a program to carry out the purposes of this Agreement.  In particular, the competent authorities of the Contracting Governments may amend Appendix A as they deem necessary within the limitations of this Agreement and the Code.

- 12 -

2.   The competent authorities of the Contracting Governments shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of this Agreement and may communicate directly for this purpose.   In particular, the competent authorities may agree to the common meaning of a term and may determine when costs are extraordinary for purposes of this Article.

3.   Unless the competent authorities of the Contracting Governments otherwise agree, ordinary costs incurred in providing assistance shall be borne by the requested Government and extraordinary costs incurred in providing assistance shall be borne by the applicant Government.   The competent authorities of the Contracting Governments may agree not to charge each other for the costs of reproduction of information routinely exchanged.


## Article 6

### MUTUAL AGREEMENT PROCEDURE ON POTENTIAL DOUBLE TAXATION

1.   When by reason of inconsistent positions taken by the Contracting Governments, a taxpayer is or would be subject to inconsistent tax treatment by the two jurisdictions, the competent authorities of the Contracting Governments shall endeavor to agree upon the facts and circumstances necessary to achieve consistent application of the tax laws of the respective Governments.   In particular, but not by way of limitation, the

- 13 -

competent authorities of the Contracting Governments may consult
together to endeavor to agree:

  a)   To the same allocation of income under section 482
       of the Code;

  b)   To the same determination of residency of a
       particular taxpayer; or

  c)   To the same determination of the source of
       particular items of income.

## Article 7

### OTHER APPLICATIONS OF AGREEMENT

1.   The Contracting Governments agree that when they have
knowledge that a taxpayer has changed residence from one taxing
jurisdiction to the other and seeks to change methods of
accounting (or to make an initial election), no such change or
election shall be permitted until the competent authorities have
consulted and determined that such change or election will not
lead to the evasion or avoidance of taxes imposed by either of
the Contracting Governments.  This paragraph includes initial
adoption of an accounting method or an election inconsistent with
a method or election previously utilized in the other
jurisdiction by the taxpayer.

2.   The Contracting Governments agree that a Virgin Islands
corporation owned or controlled directly or indirectly by a

- 14 -

person whose beneficial ownership is undisclosed (such as through bearer shares) shall be treated as owned or controlled to that extent by a U.S. person for purposes of the respective Governments' tax laws.

3.    The Contracting Governments agree that for purposes of determining whether a person qualifies as a bona fide resident of the Virgin Islands under section 932 of the Code the definition to be used shall be the definition contained in the then-applicable regulations promulgated by the United States.

4.    The Contracting Governments agree that the United States may use its regulatory authority over sourcing rules to determine that certain income (such as income from the sale of property) earned by certain former residents of the United States who become residents of the Virgin Islands is U.S.-source income for purposes of section 934(b) of the Code and therefore tax on such income may not be reduced or rebated by the Virgin Islands.

5.    Any taxpayer information disclosed to the United States shall become "taxpayer return information" as defined by section 6103(b)(3) of the Code and may be redisclosed only in accordance with provisions of the Code or an applicable treaty.

6.    Subject to the restrictions and other provisions of this Agreement and the availability of enforcement resources, the competent authorities will develop a cooperative return selection and examination program with the objective of avoiding unnecessary duplication of examination coverage.

- 15 -

7.    Subject to the restrictions and other provisions of this Agreement, the Contracting Governments will develop a simultaneous examination program for both civil and criminal investigations.

8.    To the extent permitted by law and subject to the availability of enforcement resources, the United States will assist in collecting taxes owed to the Virgin Islands by Virgin Islands taxpayers present in the United States.    The competent authorities will discuss appropriate procedures for facilitating such collection.    Any taxes collected shall be remitted to the Virgin Islands, less the reasonable expenses incurred in collection.

9.    In addition to the exchange of tax and other information, the competent authorities will, to the extent feasible, extend to each other assistance in other tax administration matters.    This may include such activities as taxpayer assistance, stocking tax forms for the public, training of personnel, preparing special statistical studies and compilations of data, development and improvement of tax administration systems and procedures, as well as such other activities as may improve tax administration.

- 16 -

## Article 8

### ENTRY INTO FORCE

This Agreement shall enter into force upon signature by the duly authorized representatives of the Contracting Governments.

## Article 9

### AMENDMENT AND TERMINATION

1.    This Agreement may be modified or amended by mutual consent of the Contracting Governments.

2.    This agreement shall remain in force until terminated by one of the Contracting Governments. Either Contracting Government may terminate the Agreement at any time after the Agreement enters into force provided that at least 6 months prior notice of termination has been given.

3.    Any unauthorized use or disclosure of Federal returns or Federal return information as defined by section 6103(b)(1) and (2) of the Code furnished pursuant to this Agreement or inadequate procedures for safeguarding the confidentiality of such returns and return information, constitutes grounds for immediate termination of this Agreement and the exchange of

- 17 -

information thereunder, subject to the rights of administrative

appeal as provided by regulations prescribed by section

6103(p)(7) of the Code.


DONE at Washington, D.C., in duplicate, this 2 4 day of February,

1987.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA

Assistant Secretary (Tax Policy)
Department of Treasury

FOR THE GOVERNMENT OF THE
VIRGIN ISLANDS OF THE
UNITED STATES

Governor of the Virgin Islands

Director, Bureau of Internal
Revenue of the Virgin Islands

APPENDIX A

LIMITATIONS ON DISCLOSURE OF TAX INFORMATION

## Section 1.  Definitions

For purposes of this appendix, the following definitions apply:

1.1  Bureau.  The term "Bureau" means the V.I. Bureau of Internal Revenue and any successor agency.

1.2  IRS.  The term "IRS" means the Internal Revenue Service, U.S. Department of Treasury.

1.3  Possession Audit Agency.  The term "Possession Audit Agency" means the agency, body or commission which is charged under the laws of the Virgin Islands with the responsibility of auditing Possession revenues and programs.

1.4  Possession.  The term "Possession" means the Virgin Islands of the United States.

1.5  Bureau Representative.  The term "Bureau Representative" means a Bureau officer or employee designated in writing by the head of the Bureau, to the Assistant Commissioner (International) at Washington, D.C. and the Service Center Director at Philadelphia, PA, as an individual who is to inspect or receive Federal returns or Federal return information on behalf of the Bureau as provided by section 6103(d) of the Code, but only so long as the duties and employment of such officer or employee require access to Federal returns and Federal return information for purposes of Possession tax administration.

- 2 -

1.6   IRS Representative.  The term "IRS Representative" means
an officer or employee of the IRS who has been designated in
writing to the head of the Bureau by the Assistant Commissioner
(International) at Washington, D.C., or the Service Center
Director at Philadelphia, PA, as an individual who is to inspect
or receive Possession returns or Possession return information on
behalf of the IRS, but only so long as the duties and employment
of such officer or employee require access to Possession returns
and return information for the purpose of Federal tax
administration.

1.7   Federal Return.  The term "Federal Return" is defined
in the same manner as provided in section 6103(b)(1) of the Code.

1.8   Federal Return Information.  The term "Federal Return
Information" is defined in the same manner as provided in section
6103(b)(2) of the Code.  However, "Federal Return Information"
does not include information in the hands of the Possession which
it obtained wholly from sources independent from the IRS.

1.9   Possession Return.  The term "Possession Return" is
defined in the same manner as provided in section 6103(b)(1) of
the Code as it applies in the Virgin Islands.

1.10   Possession Return Information.  The term "Possession
Return Information" means a taxpayer's identity, the nature,
source, or amount of his/her income, payments, receipts,
deductions, exemptions, credits, assets, liabilities, net worth,
tax liability, tax withheld, deficiencies, overassessments, or

- 3 -

tax payments, whether the taxpayer's Possession return was, is
being, or will be examined or subject to other investigation or
processing, or any other data received by, recorded by, prepared
by, furnished to, or collected by the Bureau with respect to a
Possession return or with respect to determination of the
existence, or possible existence, of liability (or the amount
thereof) of any person under the internal revenue laws, or
related statutes, of the Possession, for any tax, penalty,
interest, fine, forfeiture, or other imposition, or offense.

   1.11  Inspection.  The term "Inspection" means any
examination of a return or return information.

   1.12  Disclosure.  The term "Disclosure" means the making
known to any person in any manner whatever a return or return
information.

   1.13  Possession Tax Administration.  The term "Possession
Tax Administration"

   (a)  means--

      (i)  the administration, management, conduct,
           direction, and supervision of the execution and
           application of the revenue laws, or related
           statutes of the Possession, and

     (ii)  the development and formulation of Possession tax
           policy relating to existing or proposed internal
           revenue laws, or related statutes, of the
           Possession; and

- 4 -

    (b)   includes assessment, collection, enforcement,

           litigation, and statistical-gathering functions under

           such laws or statutes.

   1.14  Code.  The term "Code" means the Internal Revenue Code
of 1986, as amended, and any predecessor or successor statutes.

## SECTION 2. Disclosure of Federal Returns and Federal Return Information

   2.1  Pursuant to the laws of the Possession, the Bureau is
charged with the responsibility for the administration of
Possession taxes imposed on income, inheritance, gifts, gross
receipts from the conduct of a trade or business, real property
and excise taxes on imports used in the conduct of a trade or
business.  Federal returns, and Federal return information
(whether originals, paper copy, photocopy, microfilm, magnetic
media, or any other form) received from the IRS will be used for
the purpose of, and only to the extent necessary in, Possession
tax administration.

   2.2  This Agreement and Appendix constitute the requisite
authorization pursuant to section 6103(d)(1) of the Code for the
IRS to disclose to, and permit inspection by, a Bureau
Representative of Federal returns and Federal return information
relating to taxes imposed by chapters one, two, six, eleven,
twelve, twenty-one, twenty-three, twenty-four, thirty-one,
thirty-two, forty-four, forty-five, fifty-one, fifty-two, and
subchapter D of chapter thirty-six of the Code.

- 5 -

2.3  Upon the occurrence of any change in employment,
duties, or other relevant matters affecting a Bureau
Representative's right to access to Federal returns and Federal
return information or status as a Bureau Representative, the head
of the Bureau shall promptly advise in writing the Assistant
Commissioner (International) at Washington, D.C. and the Service
Center Director at Philadelphia, PA, that such individual is no
longer a Bureau Representative.

2.4  A Bureau Representative to whom a Federal return or
Federal return information has been disclosed, may thereafter
disclose such return or return information:

> (a)  to another employee of the Bureau for the purpose
>       of and only to the extent necessary in the
>       administration of the Possession tax laws for
>       which the Bureau is responsible;
>
> (b)  to a person described in section 6103(n) of the
>       Code or to any officer or employee of such person,
>       solely for the purpose of Possession tax
>       administration and in a manner consistent with
>       applicable regulations, published rules or
>       procedures, or written communications;
>
> (c)  to a legal representative of the Bureau personally
>       and directly engaged in, and solely for use in,
>       preparation for a civil or criminal proceeding (or
>       investigation which may result in a proceeding)
>       before a Possession administration body, grand

- 6 -

jury, or court in a matter involving Possession tax administration, if the returns and return information satisfy one or more of the criteria established in section 6103(h)(4)(A), (B) or (C); and

(d)   to an officer or employee of the Possession audit agency for the purpose of and only to the extent necessary in making an audit of the Bureau.

2.5  A Federal return or Federal return information may be disclosed in a judicial or administrative proceeding pertaining to Possession tax administration, but only if the criteria established in section 6103(h)(4)(A), (B) or (C) of the Code are met.

2.6  Notwithstanding any other provision of this section, the IRS will not disclose a Federal return or Federal return information under this section if such disclosure would identify a confidential informant or seriously impair a Federal civil or criminal tax investigation.  The Bureau agrees that neither it nor its legal representatives will make any further use or disclosure of a Federal return or Federal return information disclosed to a Bureau Representative by the IRS if the IRS notifies the head of the Bureau in writing that such further use or disclosure would identify a confidential informant or seriously impair a Federal civil or criminal tax investigation. The Bureau further agrees that prior to the disclosure of any Federal return or Federal return information in a Possession

- 7 -

judicial proceeding or to any party other than the taxpayer or
his/her designee in a Possession administrative proceeding if the
return or return information satisfies one or more of the
criteria established in section 6103(h)(4)(A), (B) or (C) of the
Code, the head or legal representative of the Bureau will notify
in writing the Service Center Director or Assistant Commissioner
(International), from whom the return or return information was
received, of the intention to make such disclosure.  No officer,
employee or legal representative shall disclose a Federal return
or Federal return information in a Possession judicial or
administrative proceeding if the Service Center Director or
Assistant Commissioner (International) or their delegate, within
30 days following receipt of such written notice, informs the
head or legal representative of the Bureau that such disclosure
would identify a confidential informant or seriously impair a
Federal civil or criminal tax investigation.

2.7  Additionally, the Bureau agrees that it will notify the
Assistant Commissioner (International) when, during an audit of
the Bureau by the Possession Audit Agency, Federal returns and
Federal return information are disclosed to the Possession Audit
Agency and such information is made part of the Possession Audit
Agency's workpapers.

- 8 -

## SECTION 3.  Disclosure of Possession Returns and Possession Return Information

3.1  This Agreement and Appendix constitute the requisite authorization for the Bureau to disclose to, and permit inspection by, IRS Representatives of Possession returns and Possession return information for the purpose of, and only to the extent necessary in the administration of the internal revenue laws, or related statutes, of the United States.  Any Possession returns and Possession return information so disclosed to, or inspected by, an IRS Representative become, in the hands of the IRS, "taxpayer return information" as defined by section 6103(b)(3) of the Code and may be redisclosed by the IRS only in accordance with provisions of the Code or an applicable treaty.

## SECTION 4.  Safeguards and Other Requirements

4.1  As an express condition for the inspection and disclosure of Federal returns and Federal return information, the Bureau agrees to comply with the safeguards and requirements prescribed by section 6103(p)(4)) of the Code and any implementation of such safeguards and requirements as may be provided by regulations and published procedures including:

    (a)   furnishing an annual report to the IRS describing the procedures established and utilized by the Bureau for ensuring the confidentiality of such returns and return information;

(b) permitting the IRS to review the extent to which the Bureau is complying with the requirements of this paragraph; and

(c) informing in writing all Bureau Representatives and other persons to or by whom disclosure or inspection of Federal returns or Federal return information is authorized of the criminal penalties and civil liability provided by sections 7213 and 7431 of the Code for a disclosure of such returns and return information which is unauthorized by the Code.

4.2  As an express condition for the inspection and disclosure of Possession returns and Possession return information, the IRS agrees to comply with the safeguards and requirements prescribed by section 6103(p)(4) of the Code and any implementation of such safeguards and requirements as may be provided by regulations and published procedures.

4.3  Processing of Federal returns and Federal return information received by the Bureau from the IRS in the form of microfilms, photo-impressions, magnetic media or other format (including reformatting or reproduction, or conversion to magnetic media, punch cards, or hard copy printout) and transmission and storage of such Federal returns or Federal return information by or on behalf of the Bureau may be performed by Bureau owned and/or operated computer facilities, facilities shared by the Bureau with other Possession agencies, or by any other person described in section 6103(n) of the Code.  In those

- 10 -

cases where such facilities used by the Bureau are shared with
other Possession agencies or operated by any other person
described in section 6103(n) of the Code, the Bureau will insure
the confidentiality of the Federal returns and Federal return
information provided to such shared facility or person.  As part
of this responsibility, the terms of any contract or agreement
between the Bureau and a shared computer facility or other person
to whom Federal returns or Federal return information is or may
be disclosed for a purpose described in this subsection, will
provide, or will be amended to provide, that such person, and
officers and employees of the person, will comply with the
applicable safeguard conditions contained in regulations,
published rules and procedures, or written communications.

4.4  Because some taxpayers may be unaware that Bureau tax
officials are authorized under Federal law to obtain Federal
returns and Federal return information for Possession tax
administration purposes, the Bureau will publicize, in a manner
satisfactory to the IRS, that such returns or return information
were obtained pursuant to specific authority granted by the Code.
Similar publicity will be provided by the IRS for Possession tax
information furnished to the IRS pursuant to Possession law.

- 11 -

## SECTION 5.  Limitations

5.1  Pursuant to the provisions of section 6103(p)(2) of the Code, and of Possession law, if any, charges for furnishing returns and return information shall be governed by Article 5, paragraph 3 of the Agreement.

5.2  Under no circumstances will the Bureau permit any Federal return or Federal return information to be inspected by, or disclosed to an individual who is the chief executive officer of the Possession or any person other than one described in section 2 of this Appendix.

5.3  Notwithstanding any other provision of this Appendix, the IRS will not disclose or make known in any manner whatever to any person other than one described in Section 2 of this Appendix--

(a)  any original, copy, or abstract of any return, payment, or registration made pursuant to chapter 35 of the Code (relating to taxes on wagering);

(b)  any record required for making any such return, payment, or registration made or required pursuant to chapter 35 which the IRS is permitted by the taxpayer to examine or which is produced pursuant to section 7602 of the Code (relating to the examination of books and witnesses); or

(c)  any information obtained by the exploitation of any such return, payment, registration, or record made or required pursuant to chapter 35.

- 12 -

5.4   Notwithstanding any other provision of this Agreement or Appendix, the Internal Revenue Service will disclose or make known in any manner to any person described in section 2 of this Appendix taxpayer information which was obtained pursuant to a tax convention or exchange of information agreement between the United States and a foreign government only if such disclosure is authorized by both the relevant convention, or agreement and the Code.

SECTION 6.   Officials to Contact for Obtaining Information

6.1   Requests by the Bureau for Federal returns and Federal return information should be made to the officials named below:

> (a)   Requests by the Bureau for Federal return information in magnetic media should be made to the Assistant Commissioner (International), who will be responsible for coordinating the requests with the IRS National Office;
>
> (b)   Requests for physical inspection or copying of Federal returns, or requests for audit abstracts and reports pertaining to such returns, showing addresses within the possession should be made to the Director, Internal Revenue Service Center, Philadelphia, PA, who will be responsible for making the proper arrangements for inspection or copying; and

- 13 -

    (c)   Requests by the head of the Bureau for Federal returns of taxpayers or Federal return information relating to taxpayers showing addresses outside the possession should be made to the Assistant Commissioner (International).

6.2  Requests by authorized officers and employees of the IRS for inspection or copying of possession returns and possession return information should be made to the Director, Virgin Islands Bureau of Internal Revenue.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

RICHARD VENTO,                              )
          Petitioner,                    )
                                       )
v.                                         )
                                       )          Misc. No. 06-525-HHK-AK
UNITED STATES OF AMERICA,                   )
          Respondent &                   )
          Counterclaim Petitioner.       )
_____            )
                                       )
IRWIN L. CRAWFORD, II,                      )
          Counterclaim Respondent        )

_____

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that  a true and correct copy of the following:

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF**
**PETITION TO QUASH IRS THIRD-PARTY SUMMONS**

was served this 13th day of March 2007, by filing those documents with the Clerk of the Court under the Court's CM/ECF system, and by electronic mail to:

                               Jennifer L. Vozne
                               Trial Attorney, Tax Division
                               Stuart D. Gibson
                               Senior Litigation Counsel, Tax Division
                               Department of Justice
                               P.O. Box 227  Ben Franklin Station
                               Washington, D.C. 20044
                               (202) 307-6555/307-6586
                               Email: jennifer.l.vozne@ usdoj.gov
                                      stuart.d.gibson@usdoj.gov

Vento v. United States
Memorandum of Points and Authorities in Support of Petition To Quash IRS Third-Party Summons
Misc. No. 06-525-HHK-AK

Attorneys for Respondent &
Counterclaim Petitioner

and

Gilbert W. Boyce, Esquire
Kutak Rock LLP
1101 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036
(202) 828-2400
Email:  gilbert.boyce@kutakrock.com

Attorney for Counterclaim Respondent

Attorney for Petitioner

/s/ Michael C. Durney
_____
Michael C. Durney